IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| CHRISTOPHER BASSETT,<br><br>        Plaintiff,<br><br>vs.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>        Defendant. | CASE NO. 5:24-cv-1600<br><br>DISTRICT JUDGE<br>JOHN R. ADAMS<br><br>MAGISTRATE JUDGE<br>JAMES E. GRIMES JR.<br><br>**REPORT & RECOMMENDATION** |

Plaintiff Christopher Bassett filed a Complaint against the Commissioner of Social Security seeking judicial review of the Commissioner's decision denying supplemental security income. This Court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c). The Court referred this matter to a Magistrate Judge under Local Rule 72.2(b)(1) for the preparation of a Report and Recommendation. For the reasons stated below, I recommend that the District Court grant the Commissioner's Motion in full and remand this case for the Agency to resolve the issues raised by the vocational expert regarding the probationary period.

**Procedural history**

In February 2021, Bassett protectively filed an application for supplemental security income alleging a disability onset date of August 1,

2020,[1] and claiming he was disabled due to dysthymic disorder, anxiety disorder, and type 1 diabetes mellitus without complications. Tr. 17, 242, 272. The Social Security Administration denied Bassett's application and his motion for reconsideration. Tr. 108, 116. Bassett then requested a hearing before an Administrative Law Judge (ALJ). Tr. 148.

In May and July 2023, an ALJ held hearings. Bassett and a vocational expert testified. Tr. 48–68, 70–107. In August 2023, the ALJ issued a written decision finding that Bassett was not disabled. Tr. 17–42. The ALJ's decision became final on July 22, 2024, when the Social Security Appeals Council declined further review. Tr. 1–3; *see* 20 C.F.R. § 404.981.

Bassett filed this action on September 19, 2024. Doc. 1. He asserts the following assignment of error:

> Did ALJ Schmitz Err at Step Five (5) By Finding Other Occupations In The National Economy Were Available Under The Final RFC?

Doc. 8, at 1.

After Bassett filed his brief on the merits, the Commissioner filed a Motion to remand. Doc. 11. The Commissioner explains that the parties agree that this case should be returned to the Social Security Administration but disagree as to the remedy. *Id*. The Commissioner asks that the case be remanded so that the Agency can consider "unresolved vocational issues." *Id*.

---

[1] "Once a finding of disability is made, the [agency] must determine the onset date of the disability." *McClanahan v. Comm'r of Soc. Sec.*, 193 F. App'x 422, 425 (6th Cir. 2006).

2

at 7. Bassett contends in his opposition brief that "there is no more fact finding to explore on the matter" and asks that the Court reverse the ALJ's decision and order the Commissioner to award Bassett disability benefits.[2] Doc. 12, at 2.

**The ALJ's decision**

The ALJ made the following findings of fact and conclusions of law:

> 1. The claimant has not engaged in substantial gainful activity since February 26, 2021, the date the application was filed (20 CFR 416.971 *et seq.*).
>
> 2. The claimant has the following severe impairments: Type 1 diabetes mellitus with hyperglycemia; dysthymic disorder, alternatively diagnosed as major depressive disorder, and bipolar disorder; anxiety disorder; unspecified personality disorder; posttraumatic stress disorder (PTSD); and cannabis use disorder (20 CFR 416.920(c)).
>
> 3. The claimant does not have an impairment or a combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925, and 416.926).

---

[2] In his opposition brief, Bassett argues that the Commissioner should file a brief "to argue why a remand for further review would be more appropriate." Doc. 12, at 2. In support of his assertion that the Commissioner should file such a brief, Bassett relies on two cases in which the Court ordered the Commissioner to file an explanatory reply brief. *Id.* But in these cases the Commissioner's motion did not include argument or analysis; *See Kasarnich v. Comm'r of Soc. Sec.*, 5:24-cv-01130, Doc. 11 (N.D. Ohio filed 7/3/2024); *Owens v. Comm'r of Soc. Sec.*, 4:23-cv-1288, Doc. 10 (N.D. Ohio filed 6/29/2023). Here, in contrast, the Commissioner's motion contains factually and legally relevant arguments and analysis in support of his position. Doc. 11, at 3–7. So further briefing is not necessary.

3

4. After careful consideration of the entire record, I find that the claimant has the residual functional capacity[3] to perform medium work, as defined in 20 CFR 416.967(c), except that he is further limited in the following nonexertional respects: He can perform simple, routine, and repetitive tasks but cannot perform tasks that require a high production rate pace (such as in assembly-line work); he can interact on an occasional basis with supervisors, coworkers, and the general public, but is limited to superficial contact with others, meaning no sales, arbitration, negotiation, conflict resolution, or confrontation and no group or tandem or collaborative tasks and no management, direction, or persuasion of others; and he can respond appropriately to occasional change in a routine work setting, as long as any such changes are easily explained and/or demonstrated in advance of gradual implementation.

5. The claimant is unable to perform any past relevant work (20 CFR 416.965).

6. The claimant was born [i]n … 1987 and was 33 years old, which is defined as a younger individual age 18–49, on the date the application was filed (20 CFR 416.963).

7. The claimant has at least a high school education (20 CFR 416.964).

8. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job

---

[3] A residual functional capacity (RFC) is an "'assessment of'" a claimant's ability to work, taking his or her "limitations … into account." *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002) (quoting 20 C.F.R. § 416.945). Essentially, it's the SSA's "description of what the claimant 'can and cannot do.'" *Webb v. Comm'r of Soc. Sec.*, 368 F.3d 629, 631 (6th Cir. 2004) (quoting *Howard*, 276 F.3d at 239).

4

>skills (*see* SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).
>
>9. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.969 and 416.969a).
>
>10. The claimant has not been under a disability, as defined in the Social Security Act, since February 26, 2021, the date the application was filed (20 CFR 416.920(g)).

Tr. 20–42.

**Legal Standard**

When a court determines that the ALJ's decision is not supported by substantial evidence, it has two options. The usual course is to vacate the ALJ's decision and remand the case to the Commissioner to re-evaluate the plaintiff's application for benefits. The rarer course is to reverse the Commissioner's decision and award disability benefits. This latter course is warranted "only if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits." *Faucher v. Sec'y of Health & Hum. Servs.*, 17 F.3d 171, 176 (6th Cir. 1994); *see also* 42 U.S.C. § 405(g). An award of benefits "is proper only where the proof of disability is overwhelming or where the proof of disability is strong and evidence to the contrary is lacking." *Earley v. Comm'r of Soc. Sec.*, 893 F.3d 929, 934–35 (6th Cir. 2018) (quoting *Faucher*, 17 F.3d at 176); *see McClain v. Comm'r of Soc. Sec.*, 114 F. App'x 724, 727 (6th Cir. 2004) (remanding for further findings by the

5

Commissioner "[i]n view of the fact-bound and record-bound nature of the parties' dispute …. The deferential standard of review applicable to these cases generally counsels in favor of hearing from the ALJ first.").

**Analysis**

Bassett argues that the ALJ's stated reasons at step five for rejecting the vocational expert's hearing testimony about the amount of social interaction required during a probationary period for unskilled positions was "[i]ncorrect" and "[i]rrelevant." Doc. 8, at 8–13. Therefore, Bassett submits, "there is not a scintilla of evidence to contradict the final RFC and [the] vocational [expert's] responses to cross examination," and the Court should order the Commissioner to award Bassett disability benefits. *Id.* at 14; Doc. 12, at 2–3.

At the July 2023 administrative hearing,[4] the ALJ asked the vocational expert to consider whether a hypothetical individual could perform work if the individual was limited, in relevant part, to occasional interaction with supervisors and co-workers. Tr. 61. The vocational expert answered that such an individual could perform three types of unskilled, medium exertional-level jobs in the national economy—cleaner, kitchen helper, and cook helper—for a total of 125,000 jobs in the national economy. Tr. 62.

---

[4] After the first administrative hearing in May, Bassett filed a brief objecting to the vocational expert's job-number data. Tr. 344–45. The ALJ agreed with Bassett's concerns, so he scheduled a new hearing with a new vocational expert. Tr. 17, 40. It is testimony from this second hearing, in July, that is at issue in this case.

Next, Bassett's counsel questioned the vocational expert. Counsel referenced job probationary periods, which the vocational expert had mentioned earlier in the hearing, and asked how long the probationary periods last. Tr. 65. The following conversation ensued:

> A [vocational expert]: Well, it can vary depending on the job. I mean, each job is not set in stone in reference to probationary period. Each employer has a different parameter. Sometimes it's 30 days, sometimes it could be six months. So, you know, that depends on the employer, the type of position, the training period, those type of things. So its individualized.
>
> Q [Bassett's attorney]: Got you. Okay. So in a range though we're looking at 30 to 60 days then?
>
> A: Yeah, most likely, yeah.
>
> ***
>
> Q: And I guess the other question regarding the probationary period, since the person is being trained by either local staff or even coworkers or supervisors, during that timeframe do you feel that the individual would be having more than occasional contact with supervisors while they're being trained?
>
> A: Yes, I do believe that.

Tr. 65–66. Bassett's attorney had no further questions. Tr. 66.

Bassett filed a post-hearing brief, arguing that the vocational expert's testimony shows that "all occupations require a probationary period" during which "contact with the supervisors and coworkers would exceed all hypotheticals that limited [Bassett's] contact to occasional." Tr. 348. Bassett therefore asked the ALJ to award him disability benefits. *Id.*

7

In his decision, the ALJ rejected Bassett's argument and the vocational expert's testimony about probationary periods. Tr. 40–41. Both sides agree that the reasons the ALJ cited in doing so were insufficient. Doc. 8; Doc. 11. What the parties disagree on is the remedy. Bassett argues that there are "undisputed facts," which entitle him to an award of benefits, Doc. 12, at 1, while the Commissioner argues that there are "unresolved factual issues," which warrant remand for further consideration, Doc. 11, at 1.

To evaluate whether there are unresolved facts or "factual issues," I first consider the ALJ's decision rejecting the vocational expert's probationary period testimony. To recap: the ALJ's RFC, in relevant part, limited Bassett to occasional and superficial interaction with supervisors and coworkers. Tr. 24. Based on this RFC, the vocational expert identified three jobs that Bassett could perform. Tr. 62. Then Bassett, in a post-hearing brief, asserted that the vocational expert's testimony that these jobs included probationary periods that would expose Bassett to more than occasional contact with supervisors and coworkers meant that Bassett couldn't perform these jobs or any other work. Tr. 348. The ALJ rejected Bassett's argument, explaining:

> While so recognizing and considering this argument that the claimant's residual functional capacity would not fit the probationary period of work that requires more than occasional interaction with at least a supervisor, I cannot find it persuades against the conclusion reached by the vocational expert's testimony that significant other work remains for the claimant.

8

Work exists in the national economy when there is a significant number of jobs in one or more occupations having requirements the claimant is able to meet with his physical and mental abilities and vocational qualifications (20 CFR 416.966(b)). If evidence supports that work exists in the national economy, a finding of "not disabled" at the fifth step will hold despite factors that adjudicators should not consider, including (but not limited to) the hiring practices of specific employers (20 CFR 416.966(c)). Pairing with these overarching principles applying at the fifth step of the sequential evaluation, an individual's ability to respond appropriately to supervision and coworkers relates to the individual's capacity on a sustained ("regular and continuing") basis, as within the general definition of residual functional capacity under SSR 96-8p and the basic mental demands of competitive, remunerative, unskilled work under SSR 85-15, and thus is not confined to any distinct sample period of work, including a period of initial work between 30 days to 60 days (or longer). Further, SSR 85-15 contains general agency knowledge that jobs at the unskilled level ordinarily involve dealing primarily with objects, rather than with people; similarly, SSR 85-16 focuses adjudicators' inquiry on the individual's ability to relate to others over a period of time, thus also not confining the consideration of adjustment to other work in the national economy to a very limited sample period of work at 30 or fewer days. I also note that Ms. Smith testified that the probationary period is highly individualized and varies widely per employer and per actual job/position. While Ms. Smith did acquiesce with the representative's suggestion that, in general, such period of initial work is between 30 days to 60 days, she indicated instances of longer periods up to six months but, critically, confirmed that this is highly variable with no "set rules." Such testimony intimates a factor akin to the specific hiring and related practices by employers, which are not to be considered when making a decision at the fifth step of the sequential evaluation.

> Considering all these principles grounded in longstanding regulations pertinent to the fifth step of the sequential evaluation and longstanding Social Security Rulings that clarify and explain the regulations relating both to residual functional capacity, I cannot find the post-hearing argument about the probationary period is consistent with existing Social Security program regulations, rulings, and policy pertaining to residual functional capacity and to an individual's ability to adjust to other work that exists in the national economy. Therefore, notwithstanding the arguments raised about the probationary period, I have accepted the vocational expert's testimony that the individual can meet the mental and other demands of the three unskilled medium occupations listed above as substantial evidence supporting a finding that the claimant is able to adjust to other work within his remaining occupational base.

Tr. 41.

In his brief, Bassett argues that the ALJ's explanation that probationary periods are akin to hiring practices was incorrect. Doc. 8, at 9. This argument makes sense: an employer's hiring practice—whether to hire—is distinct in time from a probationary training period, which starts after the employee is hired. *See, e.g., Sczepanski v. Saul*, 946 F.3d 152, 158–61 (2d Cir. 2020) (rejecting the Commissioner's argument that "probationary periods can qualify as 'hiring practices' even though they occur after an employee has been hired" and discussing and collecting cases, Social Security regulations, House and Senate Reports, and treatises). Bassett also argues that the Social Security Rulings that the ALJ relied on do not support, but rather contradict, the ALJ's finding. Doc. 8, at 9.

10

The Commissioner, agreeing to a remand, does not dispute Bassett's arguments that the ALJ erred at step five. Doc. 11. The Commissioner hasn't defended any portions of the ALJ's step-five reasoning. Doc. 11. So there are no unresolved issues regarding the ALJ's rejection of the testimony taken at the hearing, leaving only the possibility of unresolved facts. As explained below, I recommend that the Court find that the testimony at the hearing amounts to unresolved facts.

In support of his position that there are no unresolved facts and the Court should award benefits, Bassett cites four Southern District of Ohio cases.[5] Doc. 8, at 13–14. I review these cases in chronological order.

First is *McLaughlin v. Comm'r of Soc. Sec.*, No. 3:17-cv-424, 2019 WL 125761 (S.D. Ohio Jan. 8, 2019), *report and recommendation adopted*, 2019 WL 1902749 (S.D. Ohio Apr. 29, 2019). The ALJ's RFC precluded the plaintiff from performing "teamwork or shared tasks." *Id.* at *3. On questioning by the plaintiff's representative at the administrative hearing, the vocational expert testified that a person who could not engage in teamwork or shared tasks could not "weather the probationary period of these unskilled jobs" that the vocational expert had identified. *Id.* The court found "no 'unresolved inconsistencies' between the [vocational expert's] testimony and the RFC and,

---

[5] Bassett also relies on two Illinois district court cases. Doc. 8, at 12, 14 (citing *Sandy C. v. Kijakazi*, 2023 WL 2133835, at *3–5 (S.D. Ind. Feb. 21, 2023) and *Bernard L. v. Saul*, 2020 WL 7027637, at *3–7 (N.D. Ill. Nov. 30, 2020). The court in *Bernard L.* did not award benefits. 2020 WL 7027637, at *7.

11

because an individual with Plaintiff's RFC could not perform jobs that exist in the national economy, the 'record adequately establishe[d] Plaintiff's entitlement to benefits.'"[6] *Id.*

Next came *McAfee v. Comm'r of Soc. Sec.*, No. 3:19-cv-125, 2020 WL 5810004 (S.D. Ohio Sept. 30, 2020), which was decided by the same judge as *McLaughlin*, had similar facts, and followed the same formula. In *McAfee*, the vocational expert testified that a person such as the plaintiff, who could not withstand over-the-shoulder supervision, could not complete the probationary period for the identified jobs requiring "close proximity to a fellow worker." *Id.* at *4. The court found that "because an individual with Plaintiff's RFC could not perform jobs that exist in the national economy," the record established an award of benefits.[7] *Id.*

Then *Otto v. Saul*, No. 3:20-cv-60, 2021 WL 1115351, (S.D. Ohio Mar. 24, 2021), a case with a no-over-the-shoulder-supervision limitation, was

---

[6] The court separately found that the plaintiff was entitled to an award of benefits because evidence of the plaintiff's disability "is strong and contrary evidence is weak." *McLaughlin*, 2019 WL 125761. at *4. The court also "note[d] the unusual circumstances of this case: its age—more than seven years old—together with three unsound ALJ decisions, all of which the Commissioner conceded included error requiring reversal." *Id.* Here, Bassett does not argue that he is entitled to an award of benefits because evidence of his disability is strong or that there are unusual circumstances present.

[7] Like in *McLaughlin*, the court separately found that an award of benefits was warranted because "evidence of [the plaintiff's] disability is strong and contrary evidence is weak" and that there were "unusual circumstances"— the case was "more than 10 years old" due to "three unsound ALJ decisions, some of which the Commissioner conceded included error requiring reversal." *McAfee*, 2020 WL 5810004, at *4–5.

12

decided. The court, citing *McLaughlin* and *McAfee*, remanded for an award of benefits when the vocational expert testified that a person with the plaintiff's limitations could not "weather the probationary period at any of these [three identified] jobs," the case was more than five years old, and the plaintiff "has raised a significant issue concerning the propriety of the ALJ's total rejection of both the treating source and consultative examiner opinions and the way in which the ALJ construed some of the evidence." *Id.* at *6–7. And in *Matthew H. v. Comm'r of Soc. Sec.*, No. 3:20-cv-241, 2022 WL 2255376 (S.D. Ohio June 23, 2022), another over-the-shoulder limitation case, the ALJ had not addressed in the decision the vocational expert's testimony about a probationary period. *Id.* at *5. The court commented that the Commissioner had not responded to the plaintiff's request for an award of benefits and found that "all essential factual issues have been resolved and the record adequately establishes Plaintiff's entitlement to benefits." *Id.*

Here, by contrast, the vocational expert testified that the timeframe for a probationary period "var[ied] depending on the job" stating that "it depends on the employer, the type of position, the training period, those kinds of things." Tr. 65. It's not clear from the transcript whether the vocational expert was specifically talking about the probationary period for the three identified jobs—Bassett's attorney didn't confirm this point. Tr. 63–66.

The vocational expert agreed with Bassett's counsel that the range of time for the probationary period was "most likely" 30 to 60 days. Tr. 65. The

13

vocational expert also agreed that a worker "would be having more than occasional contact with supervisors while they're being trained." Tr. 65. But Bassett's attorney did not ask the vocational expert if a person with the limitations described could "weather the probationary period," or language to that effect, of the three identified jobs.[8] Tr. 66. This testimony therefore falls short of the vocational experts' testimony in *McLaughlin, McAfee*, and *Otto*, wherein the vocational experts expressly stated that individuals with the plaintiffs' limitations could not survive the probationary period for the three identified jobs. *McLaughlin*, 2019 WL 125761, at *3; *McAfee*, 2020 WL 5810004, at *4; *Otto*, 2021 WL 1115351, at *6.[9] And as the Commissioner asserts, Doc. 11, at 5, if, on remand, the ALJ can show that some of the 125,000 jobs have no probationary period or would involve no more than occasional interaction with supervisors, or that other jobs with less restrictive

---

[8]   Counsel's failure to finalize this point at the hearing is puzzling. Nevertheless, counsel did not finalize this point, leaving unresolved facts. *See also* 3 Soc. Sec. Disab. Claims Prac. & Proc. § 27:83(B), *Examples of when to file posthearing briefs* (2nd ed.) (commenting that, "[f]or this argument [regarding a probationary period preclusion] to work," the claimant's representative must "focus … on the jobs the VE identified, not all jobs in general," and expressly ask the vocational expert whether the hypothetical individual could perform the identified jobs despite the probationary period, and providing a "script" for a representative to follow).

[9]   As noted, in *Otto*, unlike in *McLaughlin* and *McAfee*, the court did not make a separate finding that the plaintiff was entitled to an award of benefits based on the vocational testimony alone, but relied on additional factors which Bassett does not claim. *See Otto*, 2021 WL 1115351, at *6; *see* Docs. 8, 12. And in *Matthew H.*, the court commented that the Commissioner had not responded to the plaintiff's request for an award of benefits, 2022 WL 2255376, at *5, which is not the case here, *see* Doc. 11.

14

probationary periods would be available, the Commissioner may be able to show that there are a significant number of jobs in the national economy that Bassett can perform. *See, e.g., Sczepanski*, 946 F.3d at 162.

Indeed, the Second Circuit's decision in *Sczepanski* is instructive on this point. There, the ALJ found that the plaintiff would miss one day of work a month. 946 F.3d at 158. The plaintiff's "representative asked how much absenteeism was typically tolerated at a sedentary, unskilled, entry-level job, and the expert responded, '[n]o more than two days per month every single month.'" *Id*. at 155. The plaintiff's representative next asked "how much absenteeism or tardiness was typically tolerated during a probationary period," and the vocational expert answered that "[d]uring the probationary period of 90 to 120 days there is typically no tolerance for absence." *Id*. The ALJ interjected and said that the probationary period was irrelevant to a disability determination, and the ALJ's written decision did not address absences during the probationary period. *Id*. at 155–56. The court found that the ALJ's refusal to consider the effect of the probationary period was error but declined to award benefits. *Id*. at 161–62. The court reasoned that "[i]f the Commissioner can show on remand that even a fraction of the 3 million jobs identified by the vocational expert do not have probationary periods (or permit absences during their probationary periods), then the Commissioner may be able to show that there are significant numbers of jobs in the national economy that Sczepanski can perform." *Id*. at 162.

15

And in *Bernard L. v. Saul*, No. 19-cv-1223, 2020 WL 7027637, at *7 (N.D. Ill. Nov. 30, 2020), a case Bassett relies on, Doc. 8, at 12, 14, the court declined to award benefits because there were unresolved facts. The ALJ limited the plaintiff to occasional interaction with supervisors and coworkers. 2020 WL 7027637, at *3. The court distinguished *McLaughlin* and noted that in *McLaughlin*, "the vocational expert testified unequivocally that a claimant with those plaintiffs' limitations could not complete the training or probationary periods for the jobs at issue." *Bernard L.*, 2020 WL 7027637 at *7 (citing *McLaughlin*, 2019 WL 125761 at *3). And in *Bernard L.*, the court described a "gap in the record" because vocational expert:

> did not testify that all SVP 2 level jobs "require[ ] a 30-day training period." ... Rather, the VE testified that SVP 2 positions in general include a training period of "up to 30 days." ...[] And while the VE testified that a limitation to only occasional interactions with supervisors and coworkers would preclude a claimant from working in an SVP 2 position that included a thirty-day training period, she did not testify whether that limitation would likewise preclude working in an SVP 2 position with a shorter training period. ... Nor, finally, did the VE testify about the length of training periods for the small parts assembler, label coder, and housekeeping cleaner positions.

*Id.* at *6–7. The facts in *Bernard L.* are more similar to the facts in this case, where there is a "gap in the record" regarding the vocational expert's testimony.[10] And these more similar cases, *Sczepanski* and *Bernard L.*, support

---

10  In fact, the vocational expert's testimony in *Bernard L.* was more specific than the vocational expert's testimony in Bassett's case.

16

remanding Bassett's case back to the Agency for further consideration. *See also Janie S.Y. v. Colvin*, No. 21-cv-50428, 2025 WL 50689, at *3 (N.D. Ill. Jan. 8, 2025); *Wright v. Comm'r of Soc. Sec.*, No. 1:12-cv-1103, 2013 WL 3873947, at *2–3 (N.D. Ohio July 25, 2013).

Finally, Bassett cites *Still v. Comm'r of Soc. Sec.*, 2020 WL 1316430, at *19 (S.D. Ohio Mar. 20, 2020), *report and recommendation adopted*, 2020 WL 1904781 (S.D. Ohio Apr. 17, 2020). Doc. 12, at 2. But *Still* is not on point. In *Still*, the court found that the ALJ made numerous, egregious errors at multiple steps of the evaluation, including at step three, which could alone amount to a disability finding. *Id.* at *9–11; *see* 20 C.F.R. § 404.1520(a)(4)(iii). The ALJ erred when evaluating treating-source opinions and repeatedly ignored, misconstrued, and mischaracterized the medical evidence. *Still*, 2020 WL 1316430, at *10–11, 13, 15, 17–19. The treating physician rule, which does not apply in Bassett's case, applied in *Still* and a violation of it alone warranted remand. *Id.* at *12. After highlighting all of these errors, the court found that an award of benefits was warranted because "the evidence of disability is strong and opposing evidence is lacking in substance." *Id.* at *19. Here, Bassett does not allege that the ALJ erred in evaluating any of the record evidence; he only asserts that the ALJ erred when rejecting the vocational expert testimony about probationary periods. Doc. 8; Doc. 12.

17

For all of these reasons, I recommend that the Court find that there remain unresolved facts and that the appropriate remedy is to remand to the Commissioner for further consideration.

**Conclusion**

For the reasons explained above, I recommend that the Court grant in full the Commissioner's Motion to remand, Doc. 11, with instructions that on remand, the Agency is to consider the unresolved vocational issues regarding the probationary period.

Dated: March 13, 2025

    */s/ James E. Grimes Jr.*
    James E. Grimes Jr.
    U.S. Magistrate Judge

**OBJECTIONS**

Any objections to this Report and Recommendation must be filed with the Clerk of Court within 14 days after the party objecting has been served with a copy of this Report and Recommendation. 28 U.S.C. § 636(b)(1). Failure to file objections within the specified time may forfeit the right to appeal the District Court's order. *See Berkshire v. Beauvais*, 928 F.3d 520, 530–31 (6th Cir. 2019).